IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE J. MORRIS, : 
    Plaintiff, :
v. : Civil Action No. 18-252-RGA
DANA METZGER, et al., :
    Defendants. :

Tyrone J. Morris, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

**MEMORANDUM OPINION**

May 24, 2019
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff Tyrone J. Morris, an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 1). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 7). He commenced this action on February 13, 2018. (D.I. 1). The Court screens and reviews the Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(a). (D.I. 18).

**BACKGROUND**

The Court screened Plaintiff's original Complaint, dismissed it, and gave Plaintiff leave to amend. (D.I. 13, 14). Plaintiff filed an Amended Complaint that the Court screened and dismissed, and Plaintiff was given leave to amend. (D.I. 16, 17) In his Second Amended Complaint (D.I. 18), Plaintiff names as Defendants VCC Warden Dana Metzger, Deputy Warden Scarborough, Connections, Dr. Jackson, Nurse Practitioner Carla Cooper, and Dr. Harewood.

Plaintiff states that he has psoriasis, PTSD, OCD, and anxiety and is not receiving proper treatment. (D.I. 18 at 5, 11). Plaintiff has suffered from psoriasis for many years. He states that from 2011 through 2013 the condition was treated with Humira (a biologic) and "light therapy" with good results. (*Id.* at 8). When Plaintiff was incarcerated on August 28, 2013, the condition was not treated and it worsened. (*Id.*) After six months, Plaintiff asked for Humira treatment and was told he could not use the

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

1

drug because he had contracted hepatitis B. (*Id.*). An outside physician, Dr. Burke, told Plaintiff that the only thing that would help the condition was light therapy. (*Id.*).

While not clear, it appears that Plaintiff was given light therapy by outside physician Dr. Brathwaite, but Dr. Brathwaite closed his office. (*Id.* at 9). After that, Dr. Burke prescribed Otezla. (*Id.*). Plaintiff remained on Otezla until July 19, 2017, when he was transferred to Kent General Hospital due to an allergic reaction or infection from the Otezla. (*Id.*). Plaintiff remained hospitalized until July 26, 2017. (*Id.*; D.I. 19-1 at 2-8).

Plaintiff returned to the VCC with no medication, other than ointments, and information that he could not take any more biologics. (D.I. 18 at 10). Dr. Burke ordered Plaintiff ointment, and Plaintiff received it, "but it was never enough to apply as ordered" and his condition slowly worsened. (*Id.*).

At the end of March 2018, Plaintiff was sent the infirmary and treated by Dr. Jackson, who administered antibiotics and ointments. (*Id.*). He remained in the infirmary for five days. (*Id.*). Plaintiff returned to his dorm, and a week later was back in the infirmary to treat a staph infection. (*Id.*). Following treatment he returned to his dorm. (*Id.*) During this time, his mother spoke to Warden Metzger and Deputy Warden Scarborough several times. (*Id.* at 12). At some point in time, Scarborough spoke to Plaintiff and asked him to ask Plaintiff's mother to stop calling. (*Id.*). At the same time, Scarborough told Plaintiff that "Medical bought a light therapy box" for him. (*Id.*) Plaintiff alleges that "to this day" he has not seen it. (*Id.*).

On an unknown date, Dr. Burke put Plaintiff on a biologic after she saw Plaintiff's condition. (*Id.*). Plaintiff states, "So now, I'm on a dangerous drug still and I still have

2

not seen this light therapy that has been brought here for me." (*Id.*) He further alleges that an unnamed nurse indicated that Plaintiff does not need light therapy. (*Id.*).

Plaintiff alleges that Nurse Practitioner Cooper refuses to make sure that he receives enough ointments to apply two to three times daily. (*Id.* at 13). Plaintiff seems to allege that he can only apply the ointment after he showers and, due to the the lack of ointment, he can only shower every three to four days which has caused his condition to become much worse. (*Id.*) At times he is in pain. (*Id.*). Plaintiff alleges that he has always seen Nurse Cooper and Dr. Harewood and it was always an issue to get needed ointments. (*Id.*) Plaintiff is "suing Connections for not allowing proper treatment" of his psoriasis. (*Id.* at 5).

Exhibits to the Second Amended Complaint[2] indicate that Plaintiff was seen by Medical on September 29, 2017, October 30, 2017, October 31, 2017, January 17, 2018, February 1, 2018, and February 6, 2018. (D.I. 18-1 at 4, 6-10). Documents indicate that Plaintiff submitted grievances for ointment and therapy on June 8, 2016, May 21, 2017, July 16, 2017, September 1, 2017, October 15, 2017, December 30 and 31, 2017, and April 21, 2018. (*Id.* at 45-49, 64, 69, 71, 72). Finally, the exhibits indicate that Plaintiff was seen and treated by an outside medical provider at Burke Dermatology Dover for his psoriatic condition on August 10, 2017, September 20, 2017, and March 29, 2018. (D.I. 19 at 10-15). The March 29, 2018 notes indicate that he is scheduled for a three month follow-up. (*Id.* at 15).

---

[2] Not all exhibits are considered as many fall outside the two year statute of limitation period.

3

Plaintiff seeks injunctive relief in the form of light therapy and compensatory damages. (*Id*. at 14).

**SCREENING OF COMPLAINT**

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

4

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§1915 and 1915A, the Court must grant Plaintiff leave to amend unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id*.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a

5

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

**Respondeat Superior**. The allegation against Metzger is that Plaintiff's mother spoke to him several times. This scant allegation does not rise to the level of a constitutional violation. In addition, to the extent the claim is based upon Metzger's position as warden, the claim fails.

It is well established that claims based solely on the theory of respondeat superior or supervisor liability are facially deficient. *See Ashcroft*, 556 U.S. at 676-77; *see also Solan v. Ranck*, 326 F. App'x 97, 100-01 (3d Cir. May 8, 2009). The Second Amended Complaint does not allege any direct or personal involvement by Metzger other than to allege, as warden, he spoke to Plaintiff's mother. Plaintiff's claim rests impermissibly upon a theory of supervisory liability and, therefore, the claim against Metzger will be dismissed as frivolous pursuant 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

**Medical Needs**. Plaintiff alleges that he is not receiving appropriate care and treatment for his psoriatic condition. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of

6

serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "prison official may manifest deliberate indifference by intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

However, a prisoner has no right to choose "a specific form of medical treatment." *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. at 107. In addition, allegations of medical malpractice are not sufficient to establish a constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986).

With regard to Dr. Harewood, the complaint does not allege that he was deliberately indifferent to Plaintiff's medical needs. Dr. Harewood is barely mentioned in the Second Amended Complaint, and, when he is mentioned, it is only to say that Plaintiff always sees him. As to Dr. Jackson, the allegations are that Dr. Jackson provided Plaintiff with medical care while Plaintiff was in the infirmary. The allegations do not state constitutional violations.. Therefore, the claims against Dr. Harewood and Dr. Jackson will be dismissed as frivolous.

With regard to Nurse Cooper, Plaintiff alleges that she will not give him adequate quantities of ointment to treat his psoriasis. The Court liberally construes Plaintiff's

allegations and finds that they state what appears to be a cognizable medical needs claim against Nurse Cooper.

Plaintiff also named Connections, the VCC contract health care provider as a defendant. When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, such as Connections, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992).

In order to establish that Connections is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories). The Second Amended Complaint does not contains facts to support a claim that Connections had a policy or custom that caused the constitutional violations as alleged by Plaintiff. Therefore, the Court will dismiss the claims against Connections for failing to state a claim.

Finally, Plaintiff raises claims against prisoner administrators Metzger and Scarborough. Prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

"If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236.

With regard to Metzger and Scarborough, Plaintiff alleges that his mother spoke to them several times, that Scarborough asked Plaintiff to ask Plaintiff's mother to stop calling, and that Scarborough told Plaintiff that "Medical bought a light therapy box" for him. There are no allegations that Metzger and Scarborough had a reason to believe or had actual knowledge that Plaintiff was not receiving treatment. Of note is that as alleged, Scarborough told Plaintiff that a light therapy box had been purchased for Plaintiff's use which indicates Scarborough believed Plaintiff was receiving treatment. Even when reading the Second Amended Complaint in the most favorable light to Plaintiff, he fails to state actionable constitutional claims against Metzger and Scarborough for deliberate indifference to a serious medical need.

Accordingly, the Court will dismiss Metzger, Scarborough, Dr. Jackson, and Dr. Harewood and the claims against them as frivolous, and against Connections for failure to state a claim.

## CONCLUSION

For the above reasons, the Court will: (1) dismiss Warden Dana Metzger, Deputy Warden Scarborough, Connections, Dr. Jackson, and Dr. Harewood and the

9

claims against them; and (2) allow Plaintiff to proceed against Nurse Practitioner Carla Cooper.

An appropriate Order will be entered.