IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE J. MORRIS,

    Plaintiff,

v.                                    : Civil Action No. 18-252-RGA

CARLA COOPER MILLER,

    Defendant.

Tyrone J. Morris, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

Melony Rose Anderson, Balick & Balick, LLC. Counsel for Defendant.

**MEMORANDUM OPINION**

January 29, 2024
Wilmington, Delaware

*[signature]*
ANDREWS, U.S. District Judge:

Plaintiff Tyrone J. Morris, an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 1). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 7). The matter proceeds on the Second Amended Complaint, as later modified. (D.I. 18; see D.I. 101).[2] Before the Court are the parties' cross motions for summary judgment. (D.I. 163, 175). The matter is fully briefed.

## BACKGROUND AND FACTS ESTABLISHED BY THE RECORD

Plaintiff suffers from psoriasis. In this suit, Plaintiff brings a claim for deliberate indifference to his medical needs against Defendant Nurse Carla Cooper Miller, alleging that she provided him with inadequate quartities of ointment to treat his psoriasis and did not provide him with light therapy. Defendant asserts that she was employed by Connections Community Support Program as a nurse at JTVCC until March 29, 2019. (D.I. 164 at 3). Defendant also asserts that the last time she met with Plaintiff was on December 4, 2018. (*Id.* at 6, citing D.I. 43 at "CCSP0057."). In Plaintiff's moving papers (D.I. 175; D.I. 181), he does not mention Defendant.[3]

In February 2016, Defendant reviewed a sick call request from Plaintiff for ointment and scheduled a visit with another nurse for the next day at which Plaintiff was

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] All other Defendants were dismissed by screening orders issued pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). (D.I. 14, 17, 21).

[3] He does mention her in opposition to her motion for summary judgment, but not in any way that supports his case. (*See* D.I. 168).

1

given some ointment.  In 2018, Defendant saw Plaintiff at least five times.  Defendant also on several occasions input notes from Plaintiff's visits with offsite medical providers.  Following many of her own visits with Defendant, and his offsite provider visits, Defendant ordered ointment, in large quantities.  Other medical staff additionally ordered ointment in large quantities for Plaintiff.  Plaintiff's repeated receipt of ointment was documented in a "Self Medication MAR" log, in which he signed and acknowledged receipt of ointment and other medication.  (D.I. 54 at 153-178).

In Plaintiff's filings, he highlights notes from an offsite visit on March 29, 2018, after which the provider recommended, *inter alia*, "Cont. Triamcinolone ointment [twice a day] – Disp #3 1 lb jar," and "Clobetasol Ointment [twice a day][,] x 2 wks then 1 wk off[,] repeat." (D.I. 176 at 9).[4]  Defendant input this recommendation into Plaintiff's medical chart as "Continue Triamcinolone Ointment twice a day every day – please dispense 3 – 1 pound jars," and "Continue with Clobetasol Ointment [twice a day] x 2 weeks then 1 week off and repeat." (D.I. 43 at 88).  Under "Plan of Care," Defendant included "Triamcinolone ordered as directed – pharmacy alerted to dermatology's request," and "Clobetasol continued as requested." (*Id.*).  The Self Medication MAR log indicates that Plaintiff received three jars of Triamcinolone Ointment on April 2, 2018, April 29, 2018, May 30, 2018, June 26, 2018, July 26, 2018, August 3, 2018, and December 20, 2018.  (D.I. 54 at 161, 163, 166).  The MAR log indicates that he received one bottle of Clobetasol Ointment on May 2, 2018, May 30, 2018, August 3,

---

[4] The note itself states "BID" for each ointment.  I take judicial notice that in the medical field "BID" typically means twice a day.

2018, August 30, 2018, September 27, 2018, and December 20, 2018. (*Id.* at 160, 163, 166)

With regard to Plaintiff's light therapy claim, he received this treatment from an outside provider until the provider closed her office in early 2016. (D.I. 18 at 9; D.I. 43 at 147). Defendant and other medical staff attempted to locate a new outside provider for Plaintiff, but no providers in Delaware would accept an inmate as a patient. (D.I. 43 at 104). Defendant raised the issue with the Chief Medical Officer. (*Id.*). In March 2018, approval was secured to obtain the necessary equipment, and the matter was referred to the procurement department. (*Id.* at 95). On May 10, 2018, Defendant noted in Plaintiff's medical chart: "Patient's light therapy bed has been ordered, still awaiting instructions from Dr. Bright on the therapy. Faxed letter sent today." (*Id.* at 83).

Plaintiff's medical chart indicates that he began receiving light therapy at some point after Defendant's employment at JTVCC ended. (*See id.* at 2). It is unclear what caused the delay, although it appears that improvement in Plaintiff's condition might have rendered the treatment unnecessary until he later experienced flare-ups.

The medical records indicate that Plaintiff's psoriasis began to improve in April 2018, and continued to do so, despite some recurrence after Defendant was no longer employed at JTVCC. (*See, e.g., id.* at 85 (April 13, 2018: "Patient states that he sees an improvement daily in his skin. Patient states that every day another portion of his skin is healing and he is not 'bright red.'"); *id.* at 84 (April 20, 2018: "He states that due to the improved condition of his skin he is more hopeful that things will improve for the good."); *id.* at 82 (May 10, 2018: "Patient states that his psoriasis has improved significantly; however, he continues with it being worse below the knees."); *id.* at 80

3

(June 18, 2018: "The patient reports significant improvement in his psoriasis symptoms since starting a new treatment in April and reports no new complaints."); *id.* at 77 (August 2, 2018: "States his skin has really improved from how it was."); *id.* at 72 (August 24, 2018: Plaintiff "reports improvement with his mood since his medical condition are being addressed."); *see also id.* at 2, 13 (noting psoriasis flare ups in September and December 2019).

The parties have filed cross-motions for summary judgment.

## LEGAL STANDARD

Rule 56(c) requires the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

As a general rule, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## DISCUSSION

Defendant moves for summary judgment, arguing that there are no genuine issues of material fact that Defendant "followed the recommendations of Plaintiff's outside dermatologist in terms of the amount and type of ointment to order, ordered additional ointment for Plaintiff when he requested it, . . . made requests to the pharmacy to ensure Plaintiff received larger quantities[,] [and] did everything in her power to obtain light therapy for Plaintiff." (D.I. 164 at 12).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he or she knows

5

that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner has no right to choose a specific form of medical treatment. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. Apr. 10, 2010) (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)). "Mere disagreement as to the proper medical treatment is insufficient" to state a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted). Treatment is presumed to be proper, absent evidence that there was a violation in the standard of care. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). In addition, allegations of medical malpractice are not sufficient to establish a constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (noting that negligence is not compensable as a constitutional deprivation).

A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 103-05. "Unlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry—since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim." *Pearson*, 850 F.3d at 537. Thus, rather than requiring extrinsic proof to establish deliberate indifference based on a delay or denial of medical treatment, "[a]ll that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors." *Id.*

On this factual record, Plaintiff simply cannot establish a genuine issue of material fact supporting his deliberate-indifference claims against Defendant. The record as a whole quite clearly establishes that, to the extent that Defendant was involved in Plaintiff's care, she was responsive to his needs both as reported by Plaintiff and by outside providers, and she ordered the recommended treatment. To the extent that Plaintiff at times had less ointment than he required, or a delay in receiving light therapy, the record does not indicate a genuine issue of material fact supporting a negligence claim against Defendant, let alone a constitutional deliberate-indifference claim.

Furthermore, to the extent Plaintiff does seek to raise a medical negligence claim, the claim is governed by the Delaware Health Care Negligence Insurance and Litigation Act. 18 Del. C. §§ 6801-6865. When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury. *Bonesmo v. Nemours Foundation*, 253 F. Supp. 2d 801, 804 (D. Del. 2003); 18 Del. C.§ 6853. Plaintiff did not submit an affidavit of merit signed by an expert witness at the time he filed his Complaint. *See* 18 Del. C. § 6853(a)(1). Therefore, the claim will be dismissed.

## CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment (D.I. 163) and deny Plaintiff's motion for summary judgment (D.I. 175).

An appropriate Order will be entered.

7